UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Karen S. H.,                                          Civ. No. 17-5143 (BRT)

           Plaintiff,

v.                                                       **MEMORANDUM**
                                                           **OPINION AND ORDER**

Nancy A. Berryhill,
Acting Commissioner of
Social Security,

           Defendant.

---

David L. Christianson, Esq., Thomas A. Krause, counsel for Plaintiff.

Bahram Samie, Esq., United States Attorney's Office, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

       Pursuant to 42 U.S.C. § 405(g), Plaintiff Karen S. H. seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits. This matter is before the Court on the parties' cross–motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 13, 16.) For the reasons stated below, the Court concludes that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence in the record. Therefore, Plaintiff's motion is denied and Defendant's motion is granted.

**BACKGROUND**

**I.    Procedural History**

Plaintiff filed an application for disability insurance benefits ("DIB") on July 17, 2014, alleging a disability onset date of July 1, 2011. (Tr. 18, 258.)[1] The Social Security Administration ("SSA") denied her claim initially on December 17, 2014, and on reconsideration on April 23, 2015. (Tr. 18, 180–84, 192–94.) A hearing was then held by the ALJ on October 20, 2016. (Tr. 18, 136–47.) After the hearing, Plaintiff submitted additional medical evidence, which was reviewed and added to the record. (Tr. 11–110.) The ALJ issued a decision denying benefits on November 9, 2016 (Tr. 18, 111), and Plaintiff sought review. The SSA Appeals Council denied Plaintiff's request for review on October 3, 2017, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6); 20 C.F.R. § 404.981.

On April 11, 2018, Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g). (Doc. No. 1, Compl.) The parties then filed cross–motions for summary judgment, pursuant to the Local Rules. (Doc. Nos. 13, 16.) In Plaintiff's motion, she argues that the ALJ erred at step four of the disability evaluation analysis in determining Plaintiff's residual functional capacity ("RFC"). Plaintiff asserts that the ALJ failed to evaluate properly the work-related limitations as described by the examining psychologist, Dr. June Meyerhoff. (Doc. No. 14, Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") 15–26.) Plaintiff also argues that the ALJ erred at step five of the analysis in that

---

[1]    Throughout this Opinion and Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 12.)

the ALJ's RFC hypothetical question to the vocational expert did not precisely set forth Plaintiff's credible limitations. (Pl.'s Mem. 26–28.) Defendant argues that the ALJ properly assigned little weight to the opinion of the consultative examiner, because Dr. Meyerhoff was unable to review the most recent medical evidence and the opinion did not address all of Plaintiff's functional limitations. (Doc. No. 17, Def.'s Mem. Supp. Mot. Summ. J ("Def.'s Mem.") 13–31.)

## II.    Relevant Factual Background

Plaintiff protectively filed an application for DIB on July 14, 2014, alleging an onset date of July 1, 2011. (Tr. 114, 258.) From her date of alleged onset through 2014, Plaintiff sought and received medical treatment to address various physical complaints. Plaintiff's appeal relates to her mental impairments. Accordingly, the summary of facts focuses on Plaintiff's history of anxiety and depression.

<u>Dr. Anderson</u>:

On April 25, 2014, Plaintiff saw her primary care physician, Christina E. Anderson, M.D., for a routine physical examination. (Tr. 650, 655.) During the examination, Dr. Anderson administered the Patient Health Questionnaire (PHQ-9) depression screening and the Generalized Anxiety Disorder-7 (GAD-7) screening. (Tr. 652–53.) Her scores indicated mild depression and minimal anxiety. (Tr. 652–53.)

Plaintiff saw Dr. Anderson again on November 24, 2014, stating that she continued to feel somewhat down. (Tr. 688, 691.) Plaintiff told Dr. Anderson that she felt crabby and irritated and wanted to try seeing a psychologist. (Tr. 691.) On the PHQ-9 and GAD-7, her overall scores indicated severe depression and anxiety. (Tr. 690.)

Dr. Anderson increased Plaintiff's Lyrica dose, prescribed Cymbalta, and advised Plaintiff to start taking vitamin D daily. (Tr. 692.) Dr. Anderson also referred Plaintiff to psychologist, June Meyerhoff, Psy.D. (Tr. 692.)

Dr. Meyerhoff:

On December 6, 2014, Plaintiff presented for a consultative examination with Dr. Meyerhoff. (Tr. 565–71.) Plaintiff reported anxiety with panic attacks, not liking to be around other people, feeling irritable and lashing out, and endorsed episodic depression. (Tr. 565, 567.) Plaintiff described a history of intermittent treatment and said her primary care physician had most recently prescribed Cymbalta a week prior, but she had stopped taking it due to a feared medication interaction with over-the-counter cold medicine. (Tr. 566.)

Plaintiff reported that she lived with her husband, two children, and two dogs. (Tr. 568.) She said she liked to watch movies, read, clean the house, and play computer games. (Tr. 566.) She said she would become easily distracted when working on tasks and had to take breaks. (Tr. 567.) On a typical day, she would get up with her children around 6 a.m., let the dogs out, eat, take her medication, shower, and dress. (Tr. 567.) She said she woke her husband up around 9:30 a.m. and would watch television, play games, pay bills, sometimes go to appointments, prepare dinner, and make sure her children did their homework. (Tr. 567.) She said she would also go shopping, attempt to do yard work, and occasionally go to the museum. (Tr. 567.)

During her mental status examination, Plaintiff was at ease, and provided logical and direct responses to questions presented to her. (Tr. 568.) She displayed increased

4

anxiety when discussing certain subjects but was able to repeat four digits forward and three in reverse. (Tr. 568.) Her delayed memory for three objects was accurate after both a five-minute and a 30-minute delay. (Tr. 568.) She stated her children's birthdays, related a memory from childhood, and named the last four presidents. (Tr. 568.)

Dr. Meyerhoff diagnosed Plaintiff with generalized anxiety disorder, major depressive disorder, and obsessive-compulsive disorder based on Plaintiff's reported symptoms. (Tr. 569.) At the conclusion of the examination, Dr. Meyerhoff provided a medical source statement. (Tr. 569.) In that statement, she indicated Plaintiff had said she could follow directions adequately, but said she often had to reread instructions because of poor concentration and to verify her understanding was correct. (Tr. 569.) She also noted Plaintiff reported being easily distracted and said she procrastinated and worked at a slow pace. (Tr. 569.) Dr. Meyerhoff noted Plaintiff would not respond appropriately to others in the workplace, based on Plaintiff's statements that she did not want to be close to anyone and preferred to be alone, though she could be pleasant. (Tr. 559.) Dr. Meyerhoff noted that Plaintiff said that when she was around the public, she felt overwhelmed and would become crabby and nervous. (Tr. 569–70.) Dr. Meyerhoff also noted Plaintiff's statements regarding lashing out at others and difficulty tolerating work-based stress. (Tr. 568, 570.)

Plaintiff saw Dr. Meyerhoff again on March 10, 2015, and Dr. Meyerhoff indicated that Plaintiff mainly used the session time to complain, which Plaintiff felt was beneficial because she had no one else to talk to. (Tr. 712.)

5

By her March 31, 2015 visit, Plaintiff had started journaling, which she felt was helpful. (Tr. 716.) Plaintiff demonstrated adequate response to treatment, her appearance was within normal limits, and during a mental status examination, she demonstrated cooperative behavior, remained alert, and had dysthymic, anxious, and irritable mood. (Tr. 716.) Plaintiff was relatively the same over her next few visits (Tr. 718–21), but indicated increased stress because her daughter's family, including her daughter, her daughter's boyfriend, and two young children, had moved in with her. (Tr. 722.)

At her May 13, 2015 appointment with Dr. Anderson, Plaintiff said there were eight people living in her home and she was under increased stress, which prompted her to want to throw the rock that Dr. Meyerhoff had given her to use as a focal point at someone, as opposed to using it for the intended purpose. (Tr. 797.) Her PHQ-9 and GAD-7 scores had increased. (Tr. 797.) Dr. Anderson prescribed Clonazepam to replace Lorazepam. (Tr. 797, 802.) On May 19, 2015, Plaintiff discussed ongoing stressors and was cooperative with normal speech and cognition but demonstrated dysthymic and irritable mood. (Tr. 724.)

On June 5, 2015, Plaintiff was evaluated at Western Mental Health Center on referral from Dr. Anderson regarding medication management. (Tr. 728.) Plaintiff was taking the Wellbutrin Dr. Anderson had prescribed on a regular basis, but had not started another medication, Lorazepam, as advised. (Tr. 728.) She reported anxiety, irritability, and mood swings. (Tr. 728.) Her mental status examination was notable for overly dramatic behavior, normal speech, intact immediate, recent, and remote memory, normal fund of knowledge, logical and goal directed thoughts, and no hallucinations or

6

delusions, with good insight and judgment. (Tr. 734.) Plaintiff was talkative, anxious, intermittently tearful, and had impaired concentration. (Tr. 734.) She was diagnosed with posttraumatic stress disorder and depression, among other things, as well as assessed with a global assessment of functioning (GAF) score of 47. (Tr. 735.) Her WHODAS self-assessment score was 52. (Tr. 733.) She was advised to continue taking Wellbutrin. (Tr. 736.)

At visits on June 30, 2015, and July 14, 2015, Dr. Meyerhoff emphasized reducing her irritability, as Plaintiff mainly indicated conflict with others in her home because of difficulties with roles, responsibilities, boundaries, her expectations, and her attempts to control. (Tr. 881–83.) Dr. Meyerhoff encouraged Plaintiff to reconsider her living situation and urged her to consider non-medication treatment options. (Tr. 885.)

### III. The ALJ's Findings and Decision

In his decision dated November 15, 2016, the ALJ denied Plaintiff's application for DIB, finding that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 111–35.) The ALJ proceeded through the five-step evaluation process provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)(4). These steps are as follows: (1) whether the claimant is presently engaged in "substantial gainful activity"; (2) whether the claimant is severely impaired; (3) whether the impairment meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform other jobs available in sufficient numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 1, 2011, through her date last insured on March 31, 2016. (Tr. 116.) At step two, the ALJ found that Plaintiff's severe impairments were major depressive disorder, generalized anxiety disorder, obsessive compulsive disorder, fibromyalgia, obesity, osteoarthritis, vertigo, and low back pain. (*Id.*) The ALJ found that all other impairments, alleged and found in the record, are either non–severe or not medically determinable. (Tr. 117–20.) Since the ALJ determined that Plaintiff had severe impairments, he continued to step three of the analysis, where a claimant must show that her impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(a)(iii). In examining Plaintiff's impairments, the ALJ reviewed the Listing of Impairments, specifically Sections 1.02 (major dysfunction of a joint); Section 1.04 (disorders of the spine); Section 14.06 (undifferentiated and mixed connective tissue disease); Section 1.00Q (obesity); Section 2.07 (disturbance of labyrinthine-vestibular function); and Sections 12.04 and 12.06 (mental disorders). (Tr. 117–20.) The ALJ found that the evidence did not meet the criteria for these Listings. (*Id.*)

Before considering step four, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) subject to the following non–exertional limitations:

> The claimant is able to alternate between sitting and standing at will without going off task; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, crouch, and crawl;

8

> limited to simple, routine, repetitive tasks; occasional changes in the work setting; no public interaction; brief and superficial contact with supervisors and coworkers; no complex decision making; no rapid assembly line paced work (daily quotas but not hourly quotas).

(Tr. 120.) In determining Plaintiff's RFC, the ALJ analyzed Plaintiff's symptoms using the two–step process: (1) whether Plaintiff's medical impairment could reasonably be expected to produce her symptoms, and (2) the extent to which the symptoms limit the claimant's functioning. (Tr. 121.) The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 121.)

In making the RFC determination, the ALJ afforded great weight to the opinions of the state agency medical consultants because their "opinions [were] consistent with the weight of the evidence as it [was] before the Commissioner at the hearing level." (Tr. 127.) By contrast, the ALJ afforded little weight to the opinion of Dr. Meyerhoff because, "The opinion, while consistent with the medical evidence of record, [did] not address all functional limitations the claimant experiences." (Tr. 125.) Further, the ALJ found that Dr. Meyerhoff "was not able to review the most recent medical evidence." (*Id.*)

At step four, the ALJ found that Plaintiff had past relevant work as an assisted living worker, certified nursing assistant, and job coach. (Tr. 128.) The ALJ then found that an individual with the claimant's age, education, work experience, and RFC could

not perform the claimant's past work, due to the exertional limits. (Tr. 128); *see* 20 C.F.R. § 416.965. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform given her age, education, work experience, and RFC. (Tr. 128.) The ALJ relied on the vocational expert's testimony that, given the limitations provided, a person would be able to perform the requirements of occupations such as polisher and stuffer. (Tr. 128–29, 143–46.) Accordingly, the ALJ found that Plaintiff was capable of making a successful adjustment to other work existing in significant numbers in the national and state economies and concluded that Plaintiff was not disabled from her alleged onset date through the date of the decision. (Tr. 129.)

## DISCUSSION

### I. Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that she is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated

that she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Court has the authority to review the Commissioner's final decision denying disability benefits to Plaintiff. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, then the decision will be upheld. 42 U.S.C. § 405(g); *Kluesner*, 607 F.3d at 536 (citations omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994). The Court thus considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner*, 607 F.3d at 536. If, after review, the record as a whole supports the Commissioner's findings, the Commissioner's decision must be upheld, even if the record also supports the opposite conclusion. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Goff v. Barnhart* 421 F.3d 785, 789 (8th Cir. 2005).

## II. Analysis of the ALJ's Decision

### A. The ALJ did not err in evaluating the work-related limitations from the examining physician Dr. June Meyerhoff.

In evaluating a claimant's work-related limitations, the ALJ must evaluate every medical opinion received, regardless of the source. 20 C.F.R § 404.1527(c). Generally, the ALJ gives more weight to medical opinions from treating sources, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R § 404.1527(c)(2).

If the ALJ does not give the treating source's opinion controlling weight under section (c), the ALJ applies the factors listed in paragraphs (c)(2) through (c)(6) in determining the weight to give the medical opinion. 20 C.F.R. § 404.1527(c). These factors include: the nature and extent of the treating relationship; degree to which relevant evidence supports the physician's opinion; consistency between the opinion and the record as a whole; whether the physician is a specialist in the area in which the opinion is based; and other factors which support or contradict the opinion. 20 C.F.R. § 404.1527(d). The ALJ will then give good reasons in their notice of determination or decision for the weight given to a treating source's medical opinion. 20 C.F.R. § 404.1527(c)(2).

Plaintiff first saw Dr. Meyerhoff on December 6, 2014, after she protectively filed a Title II application for a period of disability and disability insurance benefits in July 2014. While Dr. Meyerhoff eventually became Plaintiff's therapist from March 2015 to July 2015, at the time she gave her December 2014 opinion, Dr. Meyerhoff's relationship with Plaintiff was that of a one-time consulting examiner. (Tr. 565–71, 712–25, 881–83.) The limited relationship at the time of Dr. Meyerhoff's opinion, according to the ALJ, could not provide the longitudinal picture of Plaintiff's medical impairments as described in 20 C.F.R. § 404.1527(c). Therefore, Dr. Meyerhoff's December 2014 opinion was not entitled to the greater weight otherwise assigned to a treating physician, because of her status as a consulting examiner at the time. *See* 20 C.F.R. § 404.1527(c).

The ALJ found that Dr. Meyerhoff's opinion was entitled to little weight in accordance with the factors described in (c)(2) through (c)(6). (Tr. 125.) The ALJ gave two reasons in his decision for the weight given to Dr. Meyerhoff's opinion: (1) that the opinion, while consistent with the medical evidence of record, did not address all functional limitations of the claimant; and (2) that Dr. Meyerhoff was not able to review the most recent medical evidence. (*Id.*) These reasons are sufficient to satisfy the ALJ's obligation to give good reasons for the weight given to the opinion.
20 C.F.R. § 404.1527(c). After review of the record, the Court finds that the ALJ properly assigned little weight to Dr. Meyerhoff's opinion. But even if more weight should have been assigned, the Court finds no reason for remand because Dr. Meyerhoff's opinion is still reflected in the RFC the ALJ provided. First, Dr. Meyerhoff opined that Plaintiff is easily distracted and has poor concentration.

(Tr. 125.) Addressing this concern, the RFC limits Plaintiff's abilities to: simple, routine repetitive tasks; with occasional changes in the work setting; and with no complex decision making. (Tr. 120.) Dr. Meyerhoff also opined that Plaintiff has a very slow pace. (Tr. 125.) The RFC states that there should be no rapid assembly line work, calling for daily quotas, but not hourly quotas. (Tr. 120.) In addition, Dr. Meyerhoff opined that Plaintiff would not be able to respond appropriately to others in the workplace. (Tr. 125.) The RFC, however, limits Plaintiff to brief and superficial contact with supervisors and coworkers. (Tr. 120.) And while Dr. Meyerhoff opined that Plaintiff is not able to be around the public (Tr. 125), the RFC states that Plaintiff should have no public interaction. (Tr. 120.) Finally, Dr. Meyerhoff opined that Plaintiff is not able to tolerate work life stressors. (Tr. 125.) The RFC effectively reduces the amount of work stressors through these prior provisions. By accommodating for a slower pace; simple, routine, and repetitive tasks; and limited interaction with others, the RFC reduces Plaintiff's work place stress in accordance with her functional limitations.

In sum, the substantial evidence in the record as a whole supports the ALJ's findings at step four. The ALJ permissibly assigned little weight to the opinion of the consulting examiner, Dr. June Meyehoff, and notwithstanding this determination, the RFC reflects Dr. Meyerhoff's opinion nonetheless.

**B.    The ALJ did not err in evaluating the work-related limitations from the state agency medical experts.**

The ALJ considered the opinion of the state agency physical and mental health consultants in determining the RFC, and assigned them great weight. (Tr. 127.) The ALJ

found that the state agency experts' opinions were, "generally consistent with the weight of the evidence as it [was] before the Commissioner at the hearing level." (*Id.*) Further, the ALJ noted that, "the state agency consultants have specialized knowledge in evaluating physical and mental health symptoms and impairments under the standards of the Social Security Act." (*Id.*) For these reasons, the ALJ assigned great weight to the opinion of the state agency medical experts in formulating the RFC. (*Id.*)

The great weight assigned to the opinion of the state agency experts is then also reflected in the RFC. The state agency experts opined that Plaintiff is moderately limited in her ability to carry out very short and simple instructions. (Tr. 156.) The RFC limits Plaintiff to: simple, routine, repetitive tasks; with no complex decision making. (Tr. 120.) The state agency experts also opined that Plaintiff is moderately limited in her ability to maintain attention and concentration for extended periods. (Tr. 156.) The RFC limits Plaintiff's abilities to simple, routine, repetitive tasks; with occasional changes in the work setting; and with no complex decision making. (Tr. 120.) The state agency experts opined that Plaintiff is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 156.) The RFC states that there should be no rapid assembly line paced work, daily quotas, but not hourly quotas, and provides for occasional changes in the work setting. (Tr. 120.) Finally, the state agency experts opined that Plaintiff is moderately limited in her ability to maintain socially appropriate behavior. (Tr. 156). And the RFC limits

15

Plaintiff to brief and superficial contact with supervisors and coworkers, with no public interaction. (Tr. 120.)

Plaintiff argues that the ALJ erred in failing to include all the limitations set forth by the state agency experts and first points out that there are significant differences between the limitations as described by the state agency experts and the RFC. (Pl.'s Mem. 26–28.) The Commissioner's Program Operations Manual System (POMS) DI 24510.060(B)(2) states that the Mental RFC Form is a summary document that does not constitute the RFC assessment. Thus, because the Mental RFC Form is merely a summary document, the ALJ is not bound to use the language of the state agency experts' report verbatim. (*See Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (noting that the final residual functioning capacity determination is left to the ALJ). The ALJ acknowledged that the RFC described was formulated in more "policy-complaint language than the limitations set forth in the state agency physical and mental health consultants' reports, and is slightly different in wording as a result." (Tr. 127.) Yet, even with this policy-complaint language, the RFC "is generally consistent with the limitations set forth by the state agency physical and mental health consultants, although worded slightly differently." (*Id.*)

Next, Plaintiff argues that the RFC failed to include a number of limitations as set forth in the opinion of the state agency experts. (Pl.'s Mem. 26–28.) These opinions include that Plaintiff is moderately limited in her ability to perform activities within a schedule, maintain regular attendance, to be punctual within customary tolerances, and to adhere to basic standards of neatness and cleanliness. (Tr. 156.) However, these

limitations have not been raised anywhere else in the record. (*See, e.g.*, Tr. 565–70, 688–91, 697–701, 712–25, 728–737, 797–802, 827–30, 833–37, 839–49, 881–89.) Thus, the ALJ properly discounted these portions of the state agency experts' opinion as inconsistent with the record as a whole. Further, because the ALJ assigned great weight to the opinion rather than adopting the opinion in its entirety, the ALJ is entitled to discount this portion of state agency experts' opinion. *See Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) (finding that the ALJ properly relied on the portion of the opinion which was supported by substantial record evidence and properly disregarded the unsupported advisory portion of the treating physician's RFC opinion).

Therefore, the substantial evidence in the record as a whole supports the ALJ's findings at step five. The ALJ permissibly assigned great weight to the opinion of the state agency experts, and the RFC assessment and hypothetical question[2] precisely set forth Plaintiff's credible limitations.

## ORDER

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **DENIED**;

---

[2] The hypothetical question posed was consistent with the RFC provided by the ALJ. Because the Court concludes that there was no error with the RFC provided, there likewise was no error with the hypothetical asked.

2. Defendant's Motion for Summary Judgment (Doc. No. 16) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: January 25, 2019
*s/ Becky R. Thorson*_____
BECKY R. THORSON
United States Magistrate Judge